We will move to the next case. It's Carousel Television v. Telemundo Television Studios. I see that Mr. Funes is here for the appellant, Carousel, and Mr. Herbert is here for Telemundo. And Mr. Funes, you may begin with your argument. Good morning, your honors. Freddy Funes on behalf of the appellant. For two reasons, this court should reverse district court's order granting summary judgment on behalf of the appellees on all claims. First, the letter agreement never granted Telemundo Television all of Caracol's rights in the series. Second, the district court made a logical error when it concluded that if the appellee's interpretation of the letter agreement governed, all other claims in this lawsuit had to be dismissed. And I actually want to start with count two, because count two does not just give context to count two, it gives context to the statute of limitation issue here. In count two, Caracol alleged a straightforward, run-of-the-mill, vanilla breach of contract claim under Florida law. And the claims are that Telemundo International breached what is called the distribution agreement and that Telemundo Television breached what is called the co-production agreement. And in particular, the allegations are that Telemundo Television breached section 5B of the co-production agreement. Now, the co-production deals with the creation of a series, and it states in section 5C that these two signatories own the series jointly. Section 5B limits the ability of what these signatories can do with the series. In particular, neither of them can individually go and make a derivative work of that series. If I can fast forward a little bit, because the underlying dispute really is about the letter agreement and what that means. I think that that has to affect counts one, two, and four. I want to save for the moment count three, because I think that there's an issue there. Under Florida law, if I find that a provision of a contract is clear and unambiguous on its face, can I apply the superfluity or the absurdity, not the absurdity, but the superfluous for another provision? In other words, does that canon only come into play when there is two reasonable constructions of the same language? No, your honor. I think these canons essentially go into how you're supposed to interpret a contract. You read all the contract provisions together. You make sure they're not superfluous, that different words have different meanings. But you agree that even after I consider that and all the other canons, that sometimes there's just language that's repetitive in a contract. You agree with that? Absolutely. Okay. I'm going to be candid. I'm having trouble with your position on subsection seven, on section seven, the letter agreement. Because paragraph two seems to be very, very broad, very broad. And to me, at least, it seems to cover the intellectual property or the copyright of the series, meaning the season, I'll call it season one. I know there's series and sequel, but I'll call it season one. But I agree with you that reading it that way would seem to, and reading it broadly, would seem to make the first paragraph, superfluous may not be the wrong word, but repetitive. That's what I'm having struggle, that's what I'm struggling with. And it seems to me that if I'm convinced that paragraph two is plainly read to encompass all that, the repetition could mean any number of things, but doesn't mean that I should take a reading that I think is not consistent with the plain language. So that's where I'm at with regard to that, Mr. Primus. Sure. And look, Your Honor, I think in the brief, you sort of explained how derivatives and how copyright sort of works, right? And so you can, I think, read, as we mentioned, paragraph two of the sequel, and you will own any derivatives of the sequel. And in copyright law, that's not something that's special or out of this world. It just sort of means anything that's original in the sequel. So your opposing counsel, and I think does a good job of this, frankly, in his brief, lays out that that section really has three parts to it. Part one is the copyright in, one, the all elements underlying works or portions thereof. And I know you read the thereof to mean only those things. But even if I were to read thereof that way, I'm not sure that I do. But even if I did read it thereof that way, it seems to me that the only underlying works of the sequel would be season one. In other words, the underlying works thereof the sequel have to be those things that went into the sequel, which has to include all the characters and elements of season one. Otherwise, season two wouldn't be a derivative work, it would just be its own standalone thing. I get what you're saying, your honor. But I look at what I would say, what I would point out is that the thereof and the underlying works is talking about the derivatives. So for example, and you can read paragraph two that way. I don't think it's completely somehow absurd to read. It's absurd that the way we read contracts, though, are what they an ordinary person would read them absent some sort of, you know, term of art. But, you know, we give them ordinary readings, we don't sort of stretch it to say, well, it might mean this. And that way, that would render it not superfluous. They have to be reasonable, natural readings in order for us to sort of bring in these other canons, it seems to me, and I'm just having trouble reading it naturally the way that you're asking me to read it. Well, your honor, I mean, all I can say, and, you know, is, if you look at the language, I agree, look, I agree that underlying works has to mean something, right? Otherwise, it would render that language superfluous, and we get back to the same problem, right? And then maybe you could argue that language is the biggest or something. But you can read, I think, paragraph two of section seven, so said the underlying works is talking about the derivatives. And as I said, obviously, a derivative of a derivative can have underlying works. And so when that language, and I think this is a reasonable reading, is that the underlying work is talking about the underlying works of the derivative of the derivative. And so maybe it's not talking about the underlying works of the sequel, but it is talking about the underlying works of the derivative of the sequel, which will, in fact, have underlying works, separate and apart from what you call season one and what we call the series. I'm not sure if that helps explain. I understand the argument. I just, I'm not sure that a natural reading of thereof is limited only to derivatives of the sequel, given how broad that language is, given how broad that language is. I'm just not sure that's the most natural reading of it. But I understand your argument that you're making. And it really does seem to depend a lot on thereof and what that modifies. Right. And look, we cited the Black Slot Dictionary definition. Thereof really has to mean the sequel and the derivative of the sequel. It can't mean the season or the series. The series is never actually mentioned. Well, I agree. It has to be the sequel or the derivatives of the sequel. I think that is the more natural reading, it seems to me. And if it is, the underlying works of the sequel would have to be season one. And let me ask it this way. Even under your reading, meaning thereof only applies to the derivatives of the sequel, wouldn't characters and storylines that are developed in season one that happen to be in seasons three, four, five, and six also have to include season one? No, Your Honor. Not at all. I have never seen this telenovela before. I know nothing about it. So I truly ask. Have you seen the telenovela? I've seen others. I haven't seen this one. No, no, Your Honor. And look, we cited the Brownstein versus Lindsay case, but I think the Seventh Circuit came in versus Farland case also does a decent job of explaining this. When somebody, look, and I think it goes to that Tom Stoppard hypothetical I gave in the brief, which is, look, if somebody gives a license for someone to use their original character in a derivative work, the person who creates the derivative work can own that derivative work. That being said, it doesn't mean they own the original work. And obviously, if that's... I think that's true. That's certainly true if you license the character there, but it's not just the By the way, I think that is the most natural reading. Portions thereof modifies exactly what becomes before it, which is the underlying works. But it seems to me to be very broad, not just you can, using your analogy, use Rosencrantz and Guildenstern in a completely separate work. It's you can use the underlying work. You can use Hamlet. Well, Your Honor, I mean, look, all I can say is there are multiple reasons. I mean, if you think for whatever reason, my interpretation of Section 7 or Paragraph 2 of Section 7 is incorrect, I would argue that it's ambiguous at that point. The truth of the matter is it does render Section 1, Paragraph 7 completely redundant. And if you look at Section 3, the purpose of this agreement was not to transfer or assign all rights in the series, it's to allow Telemundo to use the series to create a sequel. And so it would be a very plain language. But it would be sort of, there's a tension there between what the purpose of this agreement is supposed to be and how now Telemundo Television is arguing Paragraph 2 of Section 7 should be read. Mr. Funitz, what's interesting about what the district court did is it didn't really stop with its review of the plain language of the letter agreement itself. And then it went on and applied that parole evidence, the party's course of conduct. The court says supports finding that Carousel transferred its rights in the series to Telemundo. So I'm looking at page nine of the district court's order. What do you say about the court's applying order law, Blackhawk Heating versus Data Lease Financial Corporation, to take a look at the party's course of conduct? The court says, why would Telemundo bear the entire cost of production for the subsequent seasons if it did not have complete ownership? Moreover, why would Carousel pay hundreds of thousands of dollars to broadcast the subsequent seasons if it had retained rights in the series? The party's actions only make sense under the court's interpretation of the letter agreement. That's a great question, your honor. I was going to bring it up because this is a rhetorical question that Telemundo Television keeps mentioning. But the answer is obvious. It took all the risk because they got all of the reward. When these parties, Caracol and Telemundo Television, created the series, they shared the risk. They shared the reward. But when it came to the sequel, that profits were Telemundo Television's profits. Caracol only got consideration whatever was in the letter agreement. And so there is nothing sort of nefarious or sort of baffling about why Telemundo Television would take the risk because it thought it would make money off this. But I also want to make clear, look, we agree. There is- Telemundo made millions after the letter agreement transfer and Caracol got buyer's remorse. Right. And look, I mean, that's their argument and they have plural evidence. Nobody disputes that there's plural evidence in support of their position. But that is not the summary judgment standard. But isn't the record show that Caracol, after when the telenovela started, it had not yet aired in Columbia, right? So they didn't know how it was going to play out. Correct. And that's why the course of conduct of the parties, the district court found that Caracol decided it didn't know how it was going to play out. So it didn't want to invest the money. And so therefore, I mean, isn't that a reasonable interpretation? A reasonable interpretation, I'm sorry. Of the course of conduct of the parties? Yes, absolutely. Absolutely, Your Honor. But again, I mean, and this goes exactly to Your Honor's question. You know, that is a finding. That is interpretation based on the conduct that should be left to a fact finder. Your Honor, I see my time is up. Thank you. Thank you. And we'll hear from Mr. Herbert. Good morning. May it please the court, Gregory Herbert for the appellees, the Telemundo entities. I think the first and most persuasive argument here is that all of the copyright claims are opinion, which was consistent with at least four. Counsel, I am shocked you're starting there, especially since what you just heard. But in general, that you're starting there, since this whole thing was argued and came down to it, the district court, the interpretation of paragraph two of section seven of the letter agreement. I mean, the district court only said in a footnote, if I got there, I probably would agree with you. But that's it. And you're starting there. I'm shocked by that. If you wouldn't mind if I could start with with section seven, the argument you actually made and litigated below, that was actually the basis of the district court's decision and the basis of our argument with with appellant. So I have to say, you've heard my comments about about my view or my reading of the ordinary plain language of the second paragraph. But your opposing counsel makes a compelling argument that that reading renders the first paragraph superfluous. Can you tell me, I've tried to read it a bunch of times now. Can you tell me any scope for paragraph seven outside of pair that would that would be independently significant outside of paragraph two, reading paragraph two as broadly as you in the district court of red? Yes, Your Honor. First off, paragraph seven parallels the language of the co-production agreement paragraph five. So that very language that Carol Carl harps on the from inception through all stages of completion. That is exactly the language that appears in the ownership and copyright section of the co-production agreement. Right. But that would that wouldn't be necessary. Explain to me why that paragraph would be necessary with the second paragraph read as including ownership and control of everything throughout the universe forever of all of these things. A couple of reasons, Your Honor. And I see I see your your your confusion there. It's that first, like I said, I think the it's clear that this section is intended to affect section five, and that's why the language is written in a parallel way. Secondly, there's multiple different ways that there's a reasonable interpretation that would synthesize those two paragraphs. One of the ways is simply that the first sentence from inception through all stages of completion is intending to be the starting point up to the present until the people is ready. It's a temporal division of in copyright law. A copyright can exist the moment that any idea is fixed. Counsel, why would you need that? Why would you need a clause that went from beginning to end of series and then say you will own and control all of this for all time throughout the universe forever? Well, I think the reason is something you alluded to, Your Honor, and that is lawyers tend to be a bit repetitive and redundant because this lawyer was attempting to prevent exactly this type of claim where the plaintiff can split hairs under a microscope to make metaphors and to try to parse language. And and that may be. And there is no doubt that that does happen. I mean, if you read any of the canons in any of the literature on on on reading text, it says exactly that, that sometimes lawyers just repeat themselves, sometimes document drafters repeat themselves. But we don't get there unless we really have to get there, that inference. And your opposing counsel has has given a what he says is a plausible reading of that second paragraph. And that is that thereof refers to the underlying works thereof, the derivatives, which is what precedes that that clause, not of the sequel itself. And I think, Your Honor, just to go back to my point I was making before, I think the first sentence is somewhat backwards looking, just like you have a release that releases everything going backwards. And the second sentence is forward looking, talking about once the sequel is completed, it is simply supplementing and clarifying that Caracol owns everything after completion going forward. And in addition to that, I think you mentioned the canons of contract construction. It's very clear that you are required to look at the contract as a whole and teasing out one sentence that might be less than precise or might be a bit redundant is not the proper way to interpret a contract when the intent of the parties is clear from the contract as a whole, that in this case, Caracol is going to own all the rights. The paragraph eight specifically says, it's more specific and says, unless there is something specifically denoted in this contract that Caracol owns, then Telemundo owns everything. Nowhere in this contract does it say what Mr. Funes is suggesting that it says. If they intended that convoluted analysis about derivative works, it would have said something like that a lot more clearly. And so that interpretation is unreasonable. The court gave it a construction that is the natural reading. I think, Your Honor, focusing on the term underlying works is critical. Why would, the counter argument is why in the world would the contract say that we own the would have said, it would have said we own the underlying works, formats, and scripts of the sequel. Mr. Funes and Caracol has clearly articulated that series and sequel are two different terms. That's what it would have said if it only, if we were limited to the sequel, why would they say we own the underlying works of the sequel of the series and then later say that we also own the underlying works of the sequel, which- There's a reasonable explanation for that, which is that you own it for purposes of creating the series, but you don't own it forever. But that wouldn't make sense that we only own it for purposes of creating the series. What good would that do Telemundo? That's a matter of practical reality that we only own it while we create it and then we can't license it or distribute it or make money off of it. What good is that ownership right? And I think that touches on a key point, and that is the practical reality of the situation here. The practical reality, which is borne out by the party's conduct and not only by their conduct, but by subsequent written agreement. The council, we don't get there unless we find that there's some sort of ambiguity. And the problem also is, while there's some really great extrinsic or parole evidence, however you want to call it in your favor, there's also some extrinsic and parole evidence in the appellant's favor. And as appellant points out on summary judgment, that's not something that a district court or we can determine. Well, going back to the language of the agreement, I mean, I think cases have said no contract is absolutely 100% free of any hint of ambiguity. No sentence in the English language is 100% free of ambiguity. And multiple cases that we cited that directly address this issue of whether copyright has been assigned or has not been assigned under Section 204 of the Copyright Multiple cases look at a variety of factors, including the contract as a whole, the context of the contract, and interpreting the contract. And then they interpret the contract to amount to an assignment. One of the cases even indicated that a mirrored notation on a check for somebody who paid a royalty, that was sufficient to effectuate an assignment of the copyright. Was there a need for the court to actually look at the party's course of conduct if the plain language of the letter of agreement is clear and unambiguous? I don't think it was necessary, but I think the court also was like the drafters of this agreement applying a belt and suspenders and saying... The court could have stopped right there, right? I believe so, yes, Your Honor, it could have. And Your Honor, if I could address count three of the complaints that you indicated that you had some questions regarding count three. I do. And let me maybe say what those questions are to help you frame what's going on there. And thank you for bringing that up. So I agree that you're right with regard to contract interpretation, you would seem to have to be right with regard to counts one, two, and four. Count three, though, I know it's labeled in accounting, and that's unfortunate. But if you read the actual body of the complaint, it states that it's a breach of a provision which requires... Left, you've frozen up, unfortunately. I can't hear. Well, I think we've lost Judge Luck. No, I'm here. Can you hear me? Yes. I can hear you, yes. I apologize. I was not lost. Something clicked for a second here. In any event, that it violates the provision of the agreement which requires quarterly reports in the letter agreement, I think that is paragraph... One second. It's paragraph 11, the first and second and third provisions of that paragraph there. That seems to be independent and separate from an obligation of who owns what. In other words, even assuming you own everything, there's an independent obligation to provide these. Now, why don't you go ahead and respond to that, and I might have a follow-up question on that. Certainly, Your Honor. Now, count three, the argument of count three, we believe, is a complete red herring. It's the tail wagging the dog. And also, the argument has been waived under this court's precedent. And the reason I say that is that we moved for final summary judgment as to all counts, including count three in our motion for summary judgment. We cited case law that said that this count needs to be dismissed, both because of the interpretation of the contract issue, which you mentioned, and also because an accounting is improper when the plaintiff has had the opportunity to engage in discovery to ascertain damages. We cited cases. We made the argument. The plaintiff did not respond to that, did not brief that issue in his response to the motion for summary judgment at all. And the Holder case from this court specifically says that it's consideration on appeal. And what it says, it's a matter of fairness. We're being sandbagged. It says if you don't brief an issue at summary judgment stage, when it's a motion for final summary judgment on all counts, if you don't brief that issue, then you can't sandbag the other side later and bring it up on appeal. So we argue that it's waived, number one. But also— But counsel, this goes to the nature of the claim. In other words, this isn't an argument in favor or not. You made the point that an accounting isn't appropriate under the circumstances you do. And the answer seems to be this really isn't an accounting, an equitable accounting claim, which is what you were referring to. This is really a separate species of a breach of contract claim. So, sorry, go ahead. And I didn't mean to interrupt, Don. I apologize. No, you're fine. Okay. The answer is that the plaintiff on this record, that is before this court, the plaintiff has not raised a genuine issue of material dispute of fact on that count. And going back to the substance of the count, that count says a lot more than the one paragraph of the letter agreement. That count says that we breached the co-production agreement in our province when accounting for that. We breached the international distribution agreement, which they never mentioned anywhere on their briefs. And that we also breached their copyright rights under the interpretation of the contract that assigns the copyright to us. So it's a very confused and poorly pleaded count in our view. It was a shotgun approach. We think it was a throwaway count to try to have a tail wag a dog. We addressed it in our brief, and those are solid grounds for dismissing that count, which we requested, which the court gave, and the plaintiff, Caracol, never raised. And those alternative grounds, as I understand it, are, and correct me if I'm wrong, I don't want to misspeak for you or your position in any way, are that, at least in the letter agreement, the requirement to provide quarterly reports is triggered only if payment is due to Caracol on a quarterly basis. And because the production costs were, in fact, and there's evidence from Mr. Issa Bashal stating that the production costs were always exceeded and would always exceed and did always exceed what was otherwise being titled, nothing was ever due and therefore no report was there. Is that a fair description of your alternative argument? That's exactly right, Your Honor. I think he pronounces his name Bashal. I apologize. Was that litigated below? It was subject to discovery, and it was raised in our, we moved to dismiss the count in our motion for summary judgment, and we cited case law supporting the dismissal of that count. In our statement of material facts, we addressed that we know that the plaintiff didn't really care about that count. It was a fair way to count. This case is about copyright ownership and whether or not they assigned the copyright to us. That's what the case is about. That's why they didn't brief it. So it really would be unfair. It would be sandbagging us to allow them to use this as a wedge to require reversal. If counsel, if for some reason I were to read the language to mean that a quarterly report was required, could there be a profit under the calculation, under the agreement? No, Your Honor. That's exactly correct analysis. And yet another reason why an accounting claim fails. Thank you, counsel. All right, Mr. Herbert, I think we have your argument. Thank you. We'll hear from Mr. Funes on rebuttal. Your Honor, I just want to make clear. This case is not an appeal after trial. It is an appeal after summary judgment. And the question is, is there issue of material fact? Is there, are there reasonable interpretations that could go one way or another? Going back to Judge Lux's point, you know, I forgot this when we were going back and forth, but there is actually, you know, there is case law in Florida, KIPP versus KIPP, which we cite in the brief 844-SO2D-691. And on page 693, that court says, look, when you interpret a contract, don't read the provisions in isolation. You need to read the contract as a whole and make sure it all makes sense. And look, we're at summary judgment. This is an adversarial proceeding. This court has two interpretations before it. Our interpretation follows what section three says the purpose of this letter of human rights. It gives meaning to paragraph one of section seven. It gives meaning to paragraph two of section seven. It gives meaning to section eight. It gives meaning to all of these sections. By contrast, Telemundo Television's interpretation, and you heard him say this again, he said the same thing. But counsel, it has to be a reasonable reading. In other words, it has to be an ordinary reading that an ordinary person picking up this language, and again, taking out terms of art and things like that, would understand. I mean, that's what it has to be in order to have two different competing interpretations such that we get to the parole evidence stage, right? That is correct. That is correct. But again, you have to read the contract as a whole. We're giving meaning to its actual purpose, which is, look, here it is defined in section three. I want to go a little bit, you know, Mr. Herbert mentioned section five A's and section five C of the co-production agreement. Those sections of the co-production agreement say in perpetuity. It does have that language about from inception to through completion of all stages, but then says the ownership is in perpetuity. Now that's parole evidence anyway, but that doesn't get them anywhere. I want to, I want to talk a little bit about count three, because I think count three, there is a misconception here. Look, in count three, and I asked the court if they want to, to go to the motion for summary judgment. I think that's docket entry 86. They mentioned count three once in a footnote. The notion that because somehow they mentioned some statement of material facts, the Telemundo, that Caracol would somehow have to dismiss and count three years is preposterous, frankly. But look, but is counsel, right? That the response wasn't, Hey guys, this really isn't an equitable accounting. You're wrong. And your argument, this is actually a breach of contract and we're owed this. It's definitely breach of contract. Yes. The breach of cut well in the response to the motion for summary judgment. Right. Exactly. I don't remember off the top of my head, your honor. Isn't that relevant though. In other words, if you don't, if you don't listen, it's labeled accounting. I mean, there's no sense of butts about it. And, and if, if, if the district court understood it that way, and if it was litigated that way below, it seems sort of unfair for us to then say, well, wait a minute. It really is not that. And the parties are now arguing something different now. Well, your honor, I'll say this much. I mean, look, the issue in count three, and I think the parties have known this from the beginning because you sort of heard Mr. Herbert mentioned it is how to interpret that section. Their interpretation is because if you look at that section, it's basically says Caracol gets 15% of foreign net revenues. If the production budget is met. And the question is, But Telemundo has never denied that it would owe foreign net sales from the sequel. The issue was that Washelle, who was the managing director testified that he never expected the net earnings from the foreign distribution to ever exceed the production budget of at least $12 million. So, I mean, I knew haven't really presented any evidence or pointed to any evidence to support your claim. I mean, you just sort of in passing criticize the district court's ruling, but didn't give us a reason why. Well, I mean, I have to, you have to show us some evidence, I guess. Sure. No, that's, that's correct, your honor. And look, I agree that that's the argument they made, but the truth, look, when Mr. Pichot's testimony was saying is that the production costs shouldn't just be balanced against what is made on foreign revenue, but also what they made on domestic revenue, because they would never, as a matter of fact, America's biggest market, it would never actually be positive unless America was included. And as to evidence, truth of matters that the Apple is actually cited the evidence, which was a 30 P six representatives testimony on count three, and their argument in the brief is not that the 30 P six opponents testimony somehow wrong, but that this court can give it less weight. Because it's summary judgment that is that is just not correct. I see my time is up. So thank you, your honors. All right. Thank you, Mr. Phoenix. You've been busy this week. So have you your honors and done an excellent job in both cases. Thank you. Thank you, Mr. Herbert as well. Thank you, Mr. Herbert. Thank you.